## PIONEER TELEPHONE & TELEGRAPH CO. v. STATE *et al.*

### No. 4661.   Opinion Filed November 24, 1914.

#### (144 Pac. 599.)

**TELEGRAPHS AND TELEPHONES—Corporation Commission—Order Dividing Tolls—Appeal—Disposition of Cause.** Where, on appeal from an order of the Corporation Commission, there is an absence of competent evidence to support the order, and where the order dividing tolls will result in loss and disadvantage to all parties concerned, and the record contains a proposition for the handling of the telephone business whereby the public would have the same or better accommodations and all the parties concerned would be at less expense and probably derive a profit, the cause should be remanded for a rehearing, on which a new order may be predicated.

(Syllabus by the Court.)

*Appeal from State Corporation Commission.*

A complaint was filed with the Corporation Commission by the Twin Valley Telephone Company of Morrison and another against the Pioneer Telephone & Telegraph Company, and from the order of the Commission, the latter company brings error. Order of Commission reversed, and cause remanded for rehearing.

*Harris, Nowlin & Bledsoe, J. R. Spielman,* and *M. S. Singleton,* for plaintiff in error.

*A. J. Titus, Charles West,* Atty. Gen., and *Chas. L. Moore,* Asst. Atty. Gen., for defendants in error.

LOOFBOURROW, J.   In March, 1912, the Twin Valley Telephone Company of Morrison, and the Glencoe Telephone Company of Glencoe, joined in a complaint against the Pioneer Telephone & Telegraph Company to the Corporation Commission, which is as follows:

"Whereas, the above complainants have connection with the defendant in the toll lines now run into our exchanges for the purpose of handling toll for the said defendant and for

which they pay a commission on toll to amount to 15 per cent., whereby said complainants sustain a loss by handling said toll to amount of $17.00 to $24.00 each month in loss of labor in collecting and bad bills and we ask the Honorable Corporation Commission to have this toll divided more equally that we may have some compensation for our labors and losses."

Upon a hearing of said complaint the Corporation Commission made an order requiring the Pioneer Telephone & Telegraph Company to pay to the complainants 25 per cent. commission for handling its tolls; and from such order plaintiff in error appeals.

There are several assignments of error: First, that said judgment and order is not sustained by sufficient evidence and is contrary to the evidence; third, because the said order and judgment of the Corporation Commission is unreasonable and unjust and is confiscatory of the property of this defendant— these being the only assignments which we deem it necessary to consider.

Mr. N. S. Lemar, president and manager of the Twin Valley Telephone Company of Morrison, testified that the amount of in and out toll business transacted for the plaintiff in error in the month of December, 1911, was $90.45; the estimated cost of operator to handle tolls, $1.25; expense of collecting tolls, $15; bookkeeping, $3.35; loss on disputes, $1; total expense of handling the Pioneer Telephone & Telegraph Company's business, $20.60; 15 per cent. commission, $13.55; net loss on business, $7.05. For the month of January, 1912, the total amount of tolls was $110.60; the total expense of handling same, $37.71; 15 per cent. commission, $16.59; total loss on such business, $21.12. For the month of February the total business handled for the Pioneer was $107.75; total expense of handling that business, $34.25; total commission, $16.16; total loss, $18.09. Mr. I. M. Withers, owner and manager of the Glencoe Telephone Company, stated that the total toll business transacted by his company for the Pioneer for the month of December, 1911, was $94.05; that the time employed by his operator in handling these tolls is worth $3; cost of collecting the same, $12; bookkeeper's time, $7; 2 per cent. of the tolls being uncollectible, loss $1.88; total expense in handling this business, $23.88; that his commission of 15 per

cent. amounted to $14.10, making a total loss of $9.78 for the month's business; that this month's business was about an average for every month. On cross-examination he stated that "he never did figure up what the percentage of loss was in making the collection"; that he could not tell exactly how much it cost to collect. When asked to explain in detail why he thought he ought to be paid more than 15 per cent. commission, he admitted that "he had never figured it out on paper," his answers indicating that his conclusions were mere guesses. One of the commissioners observed that:

"The witness here knows better what is paying him and what is not paying him. I presume he has had experience enough along that line to say whether or not he can handle it at the price or not."

That might be true, but certainly plaintiff in error had a right to know the facts upon which the witness based his conclusions, and the Commission should require a statement of facts from which they could determine the true situation upon which to base an order which would result in justice being done to all parties concerned. The mere conclusions of an interested party do not usually afford a sound basis for the protection of the rights of the adverse party. Therefore the law of evidence usually requires facts instead of conclusions. But, taking the testimony of both Mr. Lemar and Mr. Withers as undisputed, and assuming that the order of the Commission had been in existence for the above months of December, January, and February, allowing a 25 per cent. commission, the Twin Valley Telephone Company would have lost in December $1.95, in January $10.06, and in February $7.31, while the Glencoe Company would lose 38 cents per month. Therefore the order of the Corporation Commission, under the evidence, compels the complainants to carry on this business with the Pioneer at a continuous loss, and it also requires the Pioneer to pay 10 per cent. more than they have been paying for these services. It is shown by the testimony that the Pioneer Company makes its collections by mailing out statements at a cost of 19 per cent. of the gross amount collected. Both the Twin Valley and Glencoe Companies hired a man and

team to drive out over the country to collect these tolls. Such expense for some months exceeded the amount collected. No testimony was offered showing the amount invested by the Twin Valley or the Glencoe Company, the amount of its business, and the amount of its operating expenses, and, in the absence of this, the witnesses should not be permitted to express a mere conclusion as to their expense incident to handling the Pioneer business; and since the record in this case contains no substantial basis essential to a determination of what is or was the proportion of expense incident to handling the Pioneer business, the order of the Commission is erroneous.

At the time of the hearing before the Commission, the Pioneer made the following offer:

"What we would like to do is to put in at these places a toll station, and connect their switchboard to that station, and perform the work—do the collecting, billing, and handling of the business; we can do it for less than they are being paid, and thus save us money and save the public money to the same extent. And that is what we would like to do, and it is possible they will consent. We would like to use this method, if we can, so that they would be satisfied. We would put in a station and connect their telephones, and even pay them a rent. We would be perfectly willing, in addition to what was ordered in the Pond Creek case, to pay them for the use of the telephone a regular business rate—just connect right up, so that there would be no inconvenience to the public at all; our own operator would handle that, and we would collect our own bills."

This offer, if accepted, would result in the complainants' business with the Pioneer producing a small profit, instead of a loss, and at the same time will be less expense to the Pioneer Company, while the public will have the same or better service at the same or less price.

The order of the Commission is therefore reversed, and the cause remanded for rehearing, upon which a new order may be predicated.

All the Justices concur, except KANE, C. J., not participating.